UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 12-50059-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER GRANTING IN PART** |
| | ) | **AND DENYING IN PART** |
| RICHARD MARSHALL, | ) | **MOTIONS TO COMPEL** |
| ELWANDA FIRE THUNDER, | ) | [DOCKET NOS. |
| REYES CHAVEZ-ROJO, | ) | 290, 296, 347, 358 & 363) |
| MOSES MONTILEAUX, JR., and | ) | |
| ZENO LITTLE, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

An indictment filed in this case charges seventeen defendants with varying counts of conspiracy to distribute methamphetamine, conspiracy to distribute marijuana, conspiracy to distribute cocaine, and distribution of marijuana. The five above-listed defendants all filed motions seeking an order from the court compelling certain discovery. These motions were referred to this magistrate judge for determination by the Honorable Chief Judge Jeffrey L. Viken. Docket Nos. 341, 361.

## FACTS

Defendant Richard Marshall is the only defendant charged in all four counts of the indictment. Defendant Reyes Chavez-Rojo is alleged to have

participated in all three of the conspiracy counts. Defendants Elwanda Fire Thunder, Zeno Little, and Moses Montileaux, Jr. are all alleged to have participated in the marijuana conspiracy. And Ms. Fire Thunder is also alleged to have participated in the cocaine conspiracy.

The conspiracy charges are all alleged to have occurred from October, 2008, through May 15, 2012, in the District of South Dakota and elsewhere. The marijuana distribution count, in which Mr. Marshall is the sole defendant charged, is alleged to have occurred on or about January 13, 2009, in the District of South Dakota.

The procedural history of these motions is of note. The five above-named defendants either filed motions of their own, or joined in pending motions filed by other defendants, requesting that the court issue an order compelling the government to provide statements of co-defendants, statements of co-conspirators, impeaching material, the government's witness list for trial, and to identify confidential informants. See Docket Nos. 290, 296, 347, 358, and 363.

In response to those motions, the government indicated that it provided additional discovery to defendants as follows: (1) memoranda of interviews of anticipated government witnesses; (2) memoranda of interviews for confidential informants; and (3) potential impeachment materials as to co-defendants such as plea agreements and criminal histories. The government promised to

disclose additional memoranda of interviews of co-defendants that have not yet been reduced to writing as soon as they are available.

In addition, the government agreed to provide the identity of testifying confidential informants and any potential Giglio cross-examination material as to those informants two weeks before the scheduled trial date.

Finally, the government provided copies of co-defendants' statements that the government intends to introduce at trial, along with a proposal for redacting one such statement in order to alleviate potential Bruton problems with the use of that statement at trial. Docket Nos. 392, 393.

In light of the government's additional disclosures to these defendants, the court directed the five moving defendants to file reply briefs to their own motions indicating if any disputes still existed regarding their discovery requests. Docket Nos. 402, 412. Ms. Fire Thunder and Mr. Chavez-Rojo did not file any reply brief. From this, the court concludes that these defendants believe the government's production of additional documents, or its promise to do so, is satisfactory to them.

Mr. Little filed a reply brief indicating that his discovery requests have been resolved by the government's production or promise to produce the additional documents discussed above. Docket No. 448. Mr. Montileaux, Jr. filed a reply brief indicating that the government's production and promises are

likewise acceptable to him, but asking that the court order the government to adhere to its stated intentions as to that production. Docket No. 451.

Mr. Marshall alone filed a reply brief indicating substantive and particularized dissatisfactions with various categories of documents requested in his original motion. Docket No. 449. Those particularized arguments and issues are discussed below.

**DISCUSSION**

**A.     Disclosure of Identity of Confidential Informants**

The first category of requested discovery that Mr. Marshall takes issue with is the identity of confidential informants. Mr. Marshall states that the government has failed to identify informants labeled as CS[1] 1, 3, 6, and 7.

According to Mr. Marshall, CS 1 is the informant who allegedly participated in the controlled buy of marijuana from Mr. Marshall in January, 2010, as charged in the marijuana distribution count, Count IV. Mr. Marshall alleges that CS 3 offers information material to the time alleged in the indictment. He states that CS 6 participated in controlled buys with others who were unnamed and CS 6 participated in a failed surveillance operation. He also asserts that CS 7 was arrested for possession of marijuana during the time frame alleged in the indictment. CS 7 identified Abraham Romero, a co-

---

[1] The court assumes the acronym "CS" to mean "Confidential Source of Information."

defendant charged in a separate indictment, as the source of his marijuana. Docket No. 449 at 2.

In Rovario v. United States, the Supreme Court recognized the "informer's privilege," that is, the government's privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Rovario v. United States, 353 U.S. 53, 59 (1957). The Supreme Court provided the following rationale for the privilege:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

Id.

The Court carved out a number of exceptions to the privilege in accordance with its underlying purpose. Id. at 60. First, the contents of a communication between an informant and law enforcement are not privileged when the contents "will not tend to reveal the identity of an informer." Id. Secondly, the privilege is no longer applicable once law enforcement discloses the identity of the informant. Id.

A third limitation "arises from the fundamental requirements of fairness" and stems from the defendant's need to prepare an adequate defense. Id. at 61, 62. "Where the disclosure of an informer's identity, or of the contents of

his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. The Eighth Circuit has provided the following guidance on determining when disclosure is appropriate:

> While there is no litmus test for determining when disclosure is required, we have held that perhaps the most important factor for a court in this circumstance to consider is whether the [confidential informant's] information is material to the defense. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Consequently, "disclosure is typically not required when the informant 'merely convey[s] information to the government but neither witness[es] nor participat[es] in the offense.'"

United States v. Lapsley, 334 F.3d 762, 764 (8th Cir. 2003) (internal citations omitted).

> In determining whether disclosure is required, the threshold issue is whether the informant is a material witness. Disclosure of the confidential informant is not mandated "unless it is vital to a fair trial." "Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." However, if the informant acts as a mere " 'tipster,' i.e., a person who merely conveys information but does not witness of participate in the offense," disclosure is not required. The defendant has the burden of showing materiality, which "requires more than speculation that the evidence an informant may provide will be material to overcome the government's privilege to withhold the identity of the informant."

Carpenter v. Lock, 257 F.3d 775, 779 (8th Cir. 2001) (internal citations omitted); see also United States v. Crenshaw, 359 F.3d 977, 1005 (8th Cir. 2004) ("However, '[i]t is well established that in "tipster" cases, where the informant is not a necessary witness to the facts, disclosure of the informant is

6

not required.'" (quoting United States v. Moore, 129 F.3d 989, 992 (8th Cir. 1997))); United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001) ("A defendant bears the burden of demonstrating that disclosure is material to the outcome of his case; in other words, that disclosure is vital to ensure a fair trial.").

The defendant bears the burden of demonstrating a need for the disclosure of a confidential informant's identity. Lapsley, 334 F.3d at 763 (quoting United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998)). "The court must weigh 'the defendant's right to information against the government's privilege to withhold the identity of its confidential informants.'" Lapsley, 334 F.3d at 763-64 (quoting United States v. Fairchild, 122 F. 3d 605, 609 (8th Cir. 1997)) (additional citation omitted). Rather than establishing a "fixed rule" on the issue of disclosure, the Supreme Court has adopted a balancing test, weighing "the public interest in protecting the flow of information against the individual's right to prepare his defense," and taking into account "the crime charged, the possible defenses, the possible significant of the informer's testimony, and other relevant factors." Rovario, 353 U.S. at 628-29.

Here, the government has stated that it "will disclose the identity (including criminal records, consideration, and other impeachment evidence, if any), of testifying confidential informants . . . two weeks before trial." See

7

Docket No. 392 at 8. Mr. Marshall's reply acknowledges the government's promise "to turn over interviews with confidential informants and co-defendants" but states that the government has not clarified "whether they will be used at trial, whether they are testimonial or non-testimonial and whether they could be modified." Docket No. 449 at 3. He argues that knowing the identity of these four unknown informants is material to his defense. The government did clarify that it will turn over information relating to *testifying* confidential informants.

The court can certainly agree that the identity of CS 1 is material to Mr. Marshall's defense to Count VI. But the government has agreed to provide all information about all four CSs *if they testify at trial*. Since the information Mr. Marshall seeks is primarily for purposes of cross-examining these confidential informants, the court fails to understand why the distinction the government draws between testifying informants and those not testifying affects Mr. Marshall's ability to defend himself. If a particular CS does not testify, there is no need to undermine his or her testimony through cross-examination.

As to whether a confidential informant's statement is "testimonial" or "non-testimonial," that is an issue relevant only to Mr. Marshall's confrontation rights under Crawford. By definition, if the confidential informant testifies, the confrontation clause will not be implicated–the informant will be in court and

8

Mr. Marshall will be able to confront him or her and cross-examine him or her. Whether a particular informant's out of court statement is testimonial or not is not relevant to the discovery issue as to whether the government is required to identify the informant. See Crawford v. Washington, 541 U.S. 36 (2004).

Mr. Marshall argues that the government did not distinguish the cases he cited in his original brief in support of his motion. But each of the cases cited by Mr. Marshall deals with discovery needed for cross-examining a *testifying* informant. See United States v. Smith, 77 F.3d 511, 512-13 (D.C. Cir. 1996) (holding that government impermissibly failed to disclose of entirety of testifying informant's agreement with government as well as informant's psychiatric history for purposes of cross-examination of informant at trial); United States v. O'Conner, 64 F.3d 355, 359-60 (8th Cir. 1995) (holding that government impermissibly failed to disclose that testifying witnesses had threatened a third witness in order to influence the third witness's trial testimony where affected government witness formed only evidence on charges); United States v. Jones, 34 F.3d 596, 599 (8th Cir. 1994) (discussing discovery of testifying witness's prior convictions); Johnson v. Brewer, 521 F.2d 556, 560 (8th Cir. 1975) (discussing impeachment of testifying informant at trial); United States v. Fowler, 465 F.2d 664, 668 (D.C. Cir. 1972) (remanding to allow cross-examination regarding testifying murder witness's drug habit); United States v. Sudikoff, 36 F. Supp. 2d 1196, 1203 (C.D. Cal. 1999)

(discussing discovery of proffers made by testifying accomplice/informant leading up to government agreement giving accomplice immunity); Moynahan v. Manson, 419 F. Supp. 1139, 1142-43 (D. Conn. 1976) (discussing cross-examination of testifying informant regarding informant's criminal actions). None of the cited cases support the proposition that the government must turn over evidence relative to a confidential informant who does *not* testify.

Mr. Marshall points out that the government relied upon the information provided by these informants in obtaining various search warrants. But while the unreliability of an informant is a proper basis for seeking to suppress the fruits of a search, it is not a basis for seeking discovery of the identity of an informant who is not going to testify at trial. See, e.g. United States v. Nieman, 520 F.3d 834, 839-40 (8th Cir. 2008) (discussing reliability of informants in the decision whether to suppress evidence).

It is Mr. Marshall's burden to demonstrate an exception to the informer's privilege. Given the government's promise to provide information about informants who testify at trial and to do so two weeks in advance of trial, Mr. Marshall does not convincingly demonstrate that the time frame proposed by the government is unfair nor that the testifying/non-testifying distinction drawn by the government deprives Mr. Marshall of the ability to defend himself. Accordingly, the court denies Mr. Marshall's request for information about confidential informants above and beyond what the government has promised

10

to provide. The court expects the government to follow through on its promise and provide the documents it has said it would.

**B.      Co-Conspirators' Statements**

Mr. Marshall indicates that his original request for statements of co-conspirators has been satisfied by the government's production of documents. Mr. Marshall does not take issue with any of the government's proposed redactions for purposes of Bruton. See Bruton v. United States, 391 U.S. 123 (1968). However, Mr. Marshall seeks a copy of defendant Edward Vocu's statement in an unredacted version. Allegedly the redacted segments deal with Mr. Vocu's statements implicating Mr. Marshall. The court will grant this request.

**C.      Criminal Histories of Co-Defendants**

The government agreed to provide discovery of each co-defendant's criminal history. However, Mr. Marshall points out that the criminal histories provided for defendant Camacho Tarango and defendant Chavez-Rojo appear incomplete. Those histories reference Colorado and Montana for Camacho Tarango, and Colorado and New Mexico for Chavez-Rojo. However, Mr. Marshall asserts that the records of convictions for these two defendants from these three states was not requested by the government nor provided to Mr. Marshall. Mr. Marshall also asserts that he received no criminal history for defendant Moses Montileaux, Sr.

The court notes that it is unlikely that either defendant Camacho Tarango or defendant Chavez-Rojo are going to testify for the government as neither of them has entered into a plea agreement. Thus, if they do not testify, their criminal histories are not needed for cross-examination. Although Mr. Montileaux, Sr. has filed a plea agreement, he has not in fact entered a plea of guilty. Thus, whether he will testify seems uncertain.

However, the government promised to provide the criminal histories of all co-defendants, regardless of whether they testify or not. Accordingly the court will order the government to request and turn over the histories for Camacho Tarango from Colorado and Montana, the histories for Reyes-Chavez from Colorado and New Mexico, and the entirety of Moses Montileaux, Sr.'s criminal history.

## CONCLUSION

Based on the foregoing law and analysis, the court hereby

ORDERS that the motion for additional discovery by defendant Elwanda Fire Thunder [Docket No. 290] is denied as moot, the defendant's failure to file any reply brief being an indication that no live controversy continues to exist on that motion following the government's additional production of documents or promise to produce documents. It is, further

ORDERED that the motion for additional discovery by defendant Reyes Chavez-Rojo [Docket No. 363] is denied as moot, the defendant's failure to file any reply brief being an indication that no live controversy continues to exist

on that motion following the government's additional production of documents or promise to produce documents.  It is, further

ORDERED that defendant Zeno Little's motion for additional discovery [Docket No. 347] is denied as moot, Mr. Little having filed a reply brief indicating that there are no remaining discovery disputes following the government's response to his motion.  It is further

ORDERED that defendant Moses Montileaux Jr.'s motion for additional discovery [Docket No. 358] is denied as moot, since the only remedy requested by Mr. Montileaux Jr. in his reply brief is the remedy the government has already promised, as an officer of the court, to provide.  Accordingly, the court finds no live case or controversy continues to exist regarding Mr. Montileaux Jr.'s motion.  It is further

ORDERED that defendant Richard Marshall's motion for additional discovery [See Docket Nos. 296, 449] is granted in part and denied in part as follows:

1. The motion is granted in that the government is ordered to produce complete criminal histories as to co-defendants Lorenzo Camacho Tarango, Reyes Chavez-Rojo, and Moses Montileaux, Sr.

2. The motion seeking an unredacted copy of co-defendant Edward Vocu's statement is granted and the government is ordered to provide that statement to Mr. Marshall.

13

3. The remaining portions of Mr. Marshall's motion to compel are denied.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See Fed. R. Crim. P. 58(g)(2); 59(a). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Fed. R. Crim. P. 59(a) Objections must be timely and specific in order to require review by the district court.

Dated May 7, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE